James J. GENGLER, Appellant,

v.

STATE of Alaska, Appellee.

No. A–6761.

Court of Appeals of Alaska.

Jan. 15, 1999.

---

Geoffry B. Wildridge, Assistant Public Defender, Fairbanks, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Thomas A. Gatlin, Assistant District Attorney, Harry L. Davis, District Attorney, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, C.J., and MANNHEIMER and STEWART, JJ.

## OPINION

MANNHEIMER, J.

James J. Gengler was charged with driving while intoxicated. At Gengler's trial, the State relied on the result of an Intoximeter test (*i.e.*, a breath test) that was administered to Gengler following his arrest.

Under regulations promulgated by the Department of Public Safety, the calibration of every breath test machine used in Alaska must be verified at least every 60 days.[1] The calibration of the Intoximeter machine used to test Gengler's breath had been verified at regular intervals prior to Gengler's test; but, following Gengler's test, the police failed to verify the calibration of this Intoximeter before the next 60-day deadline expired.

At trial, Gengler sought to introduce evidence of this fact (the police department's failure to meet the next verification deadline). Gengler argued that the failure to verify the machine's calibration before the end of the 60 days tended to cast doubt on the accuracy of his Intoximeter test result. The trial judge refused to allow Gengler to introduce this evidence. Gengler challenges this ruling on appeal.

 As we explain in more detail below, a police department's failure to perform the next scheduled calibration verification following a defendant's breath test can conceivably be relevant to attack the accuracy of the defendant's test result—but only if the defendant offers evidence that the machine was in fact out of calibration when it was next tested. Gengler offered no evidence that the machine's calibration was faulty when it was later tested, so the failure to verify the machine's calibration within the 60-day period was irrelevant. The trial judge properly refused to let Gengler introduce this evidence, and we therefore affirm Gengler's conviction.

Gengler was arrested for driving while intoxicated on the evening of March 8, 1996. He submitted to a breath test shortly after midnight on March 9th. (The result was .143 percent blood-alcohol.)

1. 13 AAC 63.100. BREATH TEST INSTRUMENT CALIBRATION AND CERTIFICATION.
(a) Before an individual breath test instrument is certified for use in the state, the correct calibration of the instrument must be verified. This initial verification must be performed by the scientific director, a supervisor, or other qualified person designated by the scientific director. The scientific director will maintain a record of the initial verification of calibration of each instrument certified for use in the state.
(b) If a breath test instrument must be recalibrated, the recalibration must be performed by the scientific director, a supervisor, or other qualified person designated by the scientific director.
(c) At intervals not to exceed 60 days, the accuracy of the calibration of a breath test instrument must be verified. The verification of calibration must be performed by an operator, supervisor, the scientific director, or other qualified person designated by the scientific director. In his or her discretion, the scientific director will require verification of calibration at more frequent intervals.

The machine used to test Gengler's breath, an Intoximeter 3000, had been tested and its calibration certified on January 11th—58 days before Gengler's test. Under 13 AAC 63.100(c), this certification was good for up to 60 days. Gengler's breath test was performed during this 60–day period of certification.

But when Gengler asked about subsequent certifications of the Intoximeter, the prosecutor admitted that he was not aware of another documented certification of the machine until May 13, 1996—that is, 123 days after the January 11th certification. Gengler asked the trial judge to advise the jury of this fact, or allow him to introduce evidence of this fact, for the purpose of attacking the accuracy of Gengler's breath test result.

In *Herter v. State*[2], this court held that a breath test result is normally admissible (and thus presumptively accurate) if the machine used to administer the breath test has been "calibrated" within 60 days prior to the challenged test, even if the police failed to "calibrate" the machine by the next 60–day deadline.[3]

▬▬ (We have placed the word "calibrate" in quotation marks because *Herter* misuses the term. "Calibration" refers to the process of setting or adjusting a machine so that it yields scientifically accurate results; this process can be analogized to setting a clock to a known accurate time or setting an empty scale to zero. Under 13 AAC 63.100, breath test machines are not calibrated every 60 days. Rather, their calibration is verified (tested against a known accurate standard) every 60 days. If, during this verification process, the tester discovers that the machine is out of calibration, then the machine must be recalibrated; under 13 AAC 63.100(b), "the recalibration must be performed by the scientific director, a supervisor, or other qualified person designated by the scientific director.")

Gengler does not attack the holding in *Herter*, and he concedes that the calibration of the Intoximeter was verified within 60 days prior to his test. Gengler argues, however, that *Herter* only establishes a presumption that his breath test was accurate. Gengler contends that he was entitled to attack this presumption by showing that the police missed the deadline for the next calibration verification (*i.e.*, by introducing evidence that the Intoximeter's calibration was not verified again until May).

We agree with Gengler that he should be able to attack the accuracy of the breath test result. However, the fact that the authorities missed the deadline for the next scheduled calibration verification was, by itself, irrelevant to the accuracy of Gengler's breath test.

▬▬ Evidence is relevant only if it tends to prove or disprove a fact that is of consequence to the proper decision of the proceeding.[4] The accuracy of Gengler's breath test was obviously of consequence to the proper determination of the charge against him. But the fact that the Intoximeter's calibration was not verified again until two months after Gengler's breath test does not, by itself, tend either to support or undermine the accuracy of Gengler's breath test. Failure to test a machine indicates nothing about how well (or how poorly) the machine has been functioning.

We upheld the breath test result in *Herter* because the testimony of law enforcement witnesses "provide[d] ample basis to support the conclusion that the absence of strict compliance [with the 60–day verification deadline] had no appreciable effect on the accuracy of Herter's breath test result."[5] We noted that Herter "ha[d] neither alleged nor established any potential adverse effect that might have resulted" from the State's failure to meet the next verification deadline.[6] In other words, Herter failed to show that the missed deadline had any relevance to assessing the accuracy of the breath test result.

---

**2.** 715 P.2d 274 (Alaska App.1986).

**3.** *Id.* at 276.

**4.** *See* Alaska Evidence Rule 401.

**5.** *Herter,* 715 P.2d at 276.

**6.** *Id.*

 

We acknowledge that Gengler would have a strong claim of relevance if, when his Intoximeter was finally tested, it had been found to be out of calibration (that is, if it was yielding inaccurate results at that time). But Gengler never asserted that the Intoximeter was out of calibration when it was tested in May. Unless accompanied by such an offer of proof, the fact that the authorities failed to perform the next scheduled verification of the Intoximeter's calibration had no bearing on the accuracy of Gengler's breath test.

The judgement of the district court is AFFIRMED.